**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Marvin Lumber and Cedar Company,

           Plaintiff,

v.

Marvin Architectural Limited,

           Defendant.

Civ. No. 16-887 (RHK/LIB)
**MEMORANDUM OPINION
AND ORDER**

---

Robert R. Weinstine, Joseph M. Windler, Michael E. Obermueller, Winthrop & Weinstine, P.A., Minneapolis, Minnesota, for Plaintiff.

Clarence J. Kuhn, The Kuhn Law Firm, P.L.L.C., Edina, Minnesota, Jeffrey M. Goldstein, Goldstein Law Firm, P.L.L.C., Washington, D.C., for Defendant.

---

**INTRODUCTION**

From 2000 to 2015, Plaintiff Marvin Lumber and Cedar Company ("Marvin") sold windows and doors to Ireland-based Defendant Marvin Architectural Limited ("MAL") pursuant to a written agreement. After terminating that agreement, Marvin filed this action, seeking a declaration that it is not liable to MAL for claimed defects in the subject windows and doors. MAL has counterclaimed, alleging *inter alia* that Marvin breached the parties' agreement by failing to defend and indemnify it in product-defect lawsuits in Ireland. Presently before the Court are Marvin's Motion to Dismiss MAL's counterclaims and Motion for Summary Judgment on its declaratory-judgment claim. For the reasons that follow, the Court will grant both Motions.

## BACKGROUND

Marvin is a Minnesota-based manufacturer of windows, doors, and related products. On February 11, 2000, it entered into an International Distribution Agreement ("Distribution Agreement") with MAL, under which it sold products to MAL for resale to consumers in Ireland. (Obermueller Decl. Ex. A.) At that time, Marvin warrantied its products against certain "defects in manufacturing, materials, and worksmanship" to all end-users for ten years. (Mooney Decl. Ex. 1) The Distribution Agreement provided that "all [p]roducts sold hereunder shall conform to the applicable warranty for such [p]roducts in effect on the date of delivery to [MAL]." (Id. at 2.) Marvin "made no other representations or warranties of any kind whatsoever." (Id.) In addition, the Distribution Agreement set forth a procedure for resolving warranty claims reported to MAL:

> [MAL] shall promptly notify [Marvin] so that [Marvin] may investigate the claimed defect. [Marvin] and its representatives shall have the right to inspect the [p]roducts claimed to be defective and [MAL] shall have no right to return any [p]roducts to [Marvin] without [Marvin]'s prior written consent. [MAL] may return to [Marvin] any [p]roducts which [Marvin] concedes are defective, and [Marvin] shall, at its option, either replace such [p]roducts without additional charge to [MAL] or credit [MAL]'s account for the purchase price of such [p]roducts.

(Id.)

The parties operated under the Distribution Agreement for over a decade,[1] cooperating to resolve consumer complaints; Marvin addressed defects covered by its warranty, and MAL addressed installation-related issues. According to MAL, however,

---

[1] The Agreement automatically renewed every two years "unless terminated by either party by written notice to the other at least twelve[] months prior to the expiration of the initial or any renewal term." (Obermueller Decl. Ex. A at 4.)

Marvin's products struggled to withstand Ireland's weather conditions.  (Mooney Decl. ¶ 10.)  Complaints of defects covered by Marvin's warranty became frequent and costly.  As a result, Marvin decided to terminate the Distribution Agreement and halt sales to consumers in Ireland.  Marvin notified MAL of this decision in 2013, and the parties agreed that the Distribution Agreement would terminate on November 30, 2015.  (Obermueller Decl. Ex. B at 1.)

On June 1, 2013, the parties entered into a "Windup Agreement," in which they "memorialize[d] . . . the termination of the Distribution Agreement, the details of [their] amicable windup, and[] settle[d] any obligation, claim, commitment, or loss, foreseen or unforeseen."  (Id.)  To that end, MAL agreed to release Marvin "to the fullest extent permitted by law, from any and all claims . . . of any kind or nature whatsoever . . . including, without limitation . . . Losses[2] that have or may in the future arise out of or relate in any way to the products that were the subject of the Distribution Agreement."  (Id. at 2.)  The parties further agreed to "resolve existing service obligations of MAL and/or warranty obligations of Marvin, pursuant to one or more separate and mutually agreed-upon protocols."  (Id. at 1.)  In an attached "Service Protocol," the parties acknowledged that "MAL has a number of existing service commitments and Marvin a number of product warranty obligations to fulfill" in Ireland.  (Id. at 4.)  They agreed that, "any and all new requests for service and/or warranty claims will be referred to Marvin directly."  (Id.)  Marvin would then rely on MAL for labor and other services as required

---

[2] The Windup Agreement defined "Losses" as "any and all claims, counterclaims, cross-claims, damages, costs, expenses, actions, causes of action, rights and liabilities of any kind or nature whatsoever."  (Obermueller Decl. Ex. B at 2.)

to resolve those claims, compensating MAL at rates set forth in the Service Protocol. (Id.)  In consideration for the release and other provisions of the Windup Agreement, Marvin paid MAL $650,000.  (Id. at 2.)  Neither the Windup Agreement nor the Service Protocol extended the termination date of the Distribution Agreement.

MAL has continued to receive warranty claims from consumers in Ireland after termination of the Distribution Agreement.  (Mooney Decl. ¶ 15.)  MAL has, in turn, asked Marvin to compensate it for these claims, but Marvin has refused.  (Id.)  Marvin contends that, although it may have warranty obligations to *consumers* in Ireland, it has no obligation to *MAL* pursuant to the Windup Agreement.  On April 6, 2016, Marvin filed this action, seeking a declaration that the Windup Agreement released it from liability to MAL.  MAL counterclaimed, alleging (1) breach of contract and the covenant of good faith and fair dealing, (2) unlawful termination, and (3) unjust enrichment.  On July 18, 2016, Marvin moved to dismiss MAL's counterclaims and, three days later, it moved for summary judgment on its declaratory-judgment claim.  The Motions have been fully briefed and the Court heard argument on September 20, 2016; the Motions are ripe for disposition.

## ANALYSIS

**I.    Declaratory judgment**

Marvin first seeks summary judgment on its declaratory-judgment claim. Summary judgment is proper if, drawing all reasonable inferences in favor of MAL as the nonmoving party, there is no genuine issue of material fact and Marvin is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S.

317, 322–23 (1986). Marvin bears the burden of showing that the material facts are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to MAL. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).

Marvin seeks a declaration that the Windup Agreement released it from liability to MAL. There is no genuine dispute whether the Windup Agreement is an enforceable contract.[3] The issue is whether it released Marvin from liability to MAL for warranty claims. In the Court's view, the answer is, "Yes."

"The construction and effect of a contract is[] a question of law unless the contract is ambiguous." Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346 (Minn. 2003).[4] A contract provision is ambiguous if it is susceptible to two or more reasonable interpretations. Id. Absent ambiguity, "the contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh." Id.

---

[3] MAL *implies* that the Windup Agreement is invalid by referring to it as "imperfectly drafted" and claiming that it was "in draft version when signed." (Def.'s Mem. Opp'n at 3–4). MAL also suggests the consideration it received was inadequate. (Id. at 19.) But MAL signed the Windup Agreement, operated under its terms, and received $650,000 in consideration. These facts are sufficient to establish the validity of the Windup Agreement as a matter of law. See, e.g., Welsh v. Barnes-Duluth Shipbuilding Co., 21 N.W.2d 43, 46 (Minn. 1945) ("The purpose of a signature is to show assent or mutuality . . . [A]ssent or mutuality may [also] be shown by the fact that the parties accepted the writing as a binding contract and acted on it as such."); Powell v. MVE Holdings, Inc., 626 N.W.2d 451, 463 (Minn. Ct. App. 2001) (A court may not "examine the adequacy of consideration so long as something of value has passed between the parties.").

[4] The Windup Agreement provides that it "shall be governed by and interpreted under the laws of the State of Minnesota" (Obermueller Decl. Ex. B at 3), and neither party has asked the Court to apply the law of a different state. Accordingly, the Court will apply Minnesota law. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003).

(internal citation omitted). Here, the Windup Agreement provides that MAL released Marvin

> to the fullest extent permitted by law, from any and all claims, counterclaims, cross-claims, damages, costs, expenses, actions, causes of action, rights and liabilities of any kind or nature whatsoever . . . [including claims] that have or may in the future arise out of or relate in any way to the products that were the subject of the Distribution Agreement.

(Obermueller Decl. Ex. B at 2.) Nowhere in its memorandum did MAL argue that this provision is ambiguous. (See Doc. No. 42.) Only at oral argument, in a last-ditch effort, did MAL argue that the phrase "any and all claims" is ambiguous because it may or may not include warranty claims. (Hrg. Tr. at 14.) In the Court's view, that argument is meritless. "Any" means "one or another without restriction or exception," and "all" means the "entire or total number, amount, or quantity of." American Heritage Dictionary 94, 117 (2d ed. 1982). No reasonable fact-finder could conclude that warranty claims somehow fall outside the scope of this broad and unambiguous provision. Since MAL released Marvin from liability[5] for "any and all claims," Marvin is entitled to the declaratory judgment it seeks.

In the final pages of its brief, MAL requested discovery under Federal Rule of Civil Procedure 56(d) to respond to Marvin's Motion. Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;

---

[5] MAL argues that it could not release Marvin from Marvin's warranty obligation to *consumers* in Ireland. At oral argument, Marvin agreed. But Marvin's obligations to consumers have no bearing on Marvin's obligations to *MAL*, and consumers in Ireland remain free to pursue warranty coverage from Marvin directly.

>    (2) allow time to obtain affidavits or declarations or to take discovery; or
>    (3) issue any other appropriate order.

"The party seeking[] discovery must show: (1) that [it has] set forth in affidavit form the specific facts that [it] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."  Toben v. Bridgestone Retail Operations, LLC, 751 F.3d 888, 894 (8th Cir. 2014) (internal citations and quotations omitted).

Here, MAL seeks "discovery as to the intent of the parties," claiming that it lacked sufficient time *to search its own records* for "additional communications" which will "demonstrate Marvin's contractual commitment to provide a warranty protocol and otherwise stand behind its products."  (Mooney Decl. ¶ 23.)  MAL also seeks to depose Marvin employees regarding their intent and "discussions leading up to the Windup Agreement."  (Id.)  Beyond these vague assertions, MAL's affidavit sets forth no *specific* facts it hopes to uncover, and "[s]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence [through discovery] that might tend to support a complaint."  Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1566 (Fed. Cir. 1987); see also Moore's Federal Practice—Civil, § 56.102[2] (3d ed. 2013) ("Specific facts sought must be identified.  Mere speculation that there is some relevant evidence not yet discovered will never suffice.").  More importantly, MAL has failed to explain how evidence of the parties' *intent* is essential to justify its opposition.  The Court has concluded that the relevant contracts here are unambiguous and dispositive and, when "a contract is unambiguous, the parties' intent is manifest from the terms of

the contract itself." Bores v. Domino's Pizza, LLC, 530 F.3d 671, 674 (8th Cir. 2008); see also Knudsen v. Transp. Leasing/Contract, Inc., 672 N.W.2d 221, 223 (Minn. Ct. App. 2003) ("[W]hen a contract is unambiguous, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent."). Accordingly, MAL's Rule 56(d) request (and its oral request to file a supplemental affidavit) will be denied.

## II.     MAL's counterclaims

Marvin has also moved to dismiss MAL's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). A pleading will survive a motion to dismiss only if it includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, the party seeking relief must set forth sufficient facts to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. In reviewing a motion to dismiss, the Court "must accept . . . specific factual allegations as true but [need] not . . . accept . . . legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). The Court may consider the pleadings themselves, as well as materials referenced in the pleadings. Dittmer Prop., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).

MAL first claims that Marvin breached the parties' contracts by refusing to defend and indemnify it from warranty claims made by consumers in Ireland. (Countercl. ¶ 25.) Duties to defend and indemnify may arise out of a contractual relationship "where there

is an . . . explicit undertaking to reimburse for liability of the character involved." Residential Funding Co., LLC v. Acad. Mortg. Corp., 59 F. Supp. 3d 935, 946 (D. Minn. 2014) (Nelson, J.) (citing Hendrickson v. Minn. Power & Light Co., 104 N.W.2d 843, 847 (Minn. 1960)). But, here, MAL alleges no *source* of these purported duties, and neither the Distribution Agreement nor the Windup Agreement imposes such duties upon Marvin.[6] "Indemnify" does appear in the Distribution Agreement, but it is *MAL* who agreed to indemnify *Marvin* for certain liabilities. (See Obermueller Decl. Ex. A at 4.) Moreover, even if Marvin had agreed to indemnify MAL, MAL has released Marvin from such an obligation as set forth in the Windup Agreement. For these reasons, MAL's breach-of-contract claim fails.

MAL next alleges that Marvin breached the implied covenant of good faith and fair dealing by (1) failing to defend and indemnify it, and (2) failing to negotiate a "warranty protocol" as purportedly required by the Windup Agreement. The implied covenant of good faith precludes one party from "unjustifiably hinder[ing]" the other party's performance of the contract. In re Hennepin Cty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995). The covenant "serves only to enforce existing contractual duties, and not to create new ones." Watkins Inc. v. Chilkoot Distrib., Inc., 719 F.3d 987, 994 (8th Cir. 2013). Here, as discussed above, Marvin had no duty to defend or indemnify MAL. With respect to a warranty protocol, the Windup Agreement provides that "Marvin and MAL will cooperate to resolve existing service obligations of

---

[6] The Distribution Agreement and the Windup Agreement are referenced in the pleadings, so the Court may consider them in deciding Marvin's Motion to Dismiss. Dittmer Prop., 708 F.3d at 1021.

MAL *and/or* warranty obligations of Marvin pursuant to *one or more* separate, mutually-agreed upon protocols." (Obermueller Decl. Ex. B at 1 (emphases added).)[7] The parties agreed upon one such protocol—the Service Protocol—which addressed Marvin's warranty responsibilities and thereby satisfied its obligation to MAL. Since Marvin met its contractual obligations, MAL has failed to allege a plausible claim for breach of the implied covenant of good faith and fair dealing. See Bethel v. Darwin Select Ins. Co., 735 F.3d 1035, 1042 (8th Cir. 2013) (dismissing covenant-of-good-faith claim based on same facts as non-viable breach-of-contract claim).

MAL further alleges that Marvin's termination of the Distribution Agreement was unlawful because "the termination date has not come, and has been extended by conduct and performance of the parties." (Countercl. ¶ 14.) MAL relies upon Steele v. Great Eastern Casualty & Indemnity Co., 197 N.W. 101, 101 (Minn. 1924), in which the Minnesota Supreme Court recognized that parties may, by their conduct, incorporate the terms of a prior, expired contract into a new contract. But Steele clarified that "[n]either party could, by any act of [its] own, continue the original or any subsequent contract[] beyond the period stated therein. To continue it beyond that period required a new agreement assented to by both parties." Id. Here, MAL previously agreed that "Marvin provided notice of termination of the Distribution Agreement, *pursuant to its terms* and effective 30 November, 2015." (Obermueller Decl. Ex. B at 1 (emphasis added).) MAL has alleged no facts suggesting Marvin agreed to modify the termination date or enter

---

[7] In another attempt to rewrite the Windup Agreement, MAL contends in its memorandum that "the [W]indup [A]greement required at least two protocols to be completed." (Def. Mem. Opp'n at 4.)

into a new contract after November 30, 2015.  Accordingly, MAL has failed to state a plausible claim for unlawful termination.

MAL asserts unjust enrichment, arguing that its resolution of warranty claims would confer a benefit upon Marvin that Marvin is not entitled to receive.  But "Minnesota does not allow recovery under an unjust enrichment theory when there is an express contract which governs the parties' relations."  Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1392 (8th Cir. 1997) (citing Sharp v. Laubersheimer, 347 N.W.2d 268, 271 (Minn. 1984)).  Since express contracts govern the parties' relationship, MAL's unjust-enrichment claim fails as a matter of law.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Marvin's Motion to Dismiss MAL's counterclaims (Doc. No. 23) and its Motion for Summary Judgment (Doc. No. 25) are **GRANTED**, and MAL's counterclaims (Doc. No. 17) are **DISMISSED WITH PREJUDICE**.  It is further **ORDERED, ADJUDGED, AND DECREED** that the Windup Agreement (Obermueller Decl. Ex. B) is valid and enforceable, and it is **DECLARED** that MAL has released Marvin from any and all liability relating to products that were the subject of the parties' Distribution Agreement.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date:  November 7, 2016         s/Richard H. Kyle
                                RICHARD H. KYLE
                                United States District Judge